Beatrice M. ROSATO, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 97–3332.

United States Court of Appeals,
Federal Circuit.

Jan. 25, 1999.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
March 22, 1999.

Beatrice M. Rosato, Casher, Connecticut,
pro se.

Janene M. Marasciullo, Attorney, Com-
mercial Litigation Branch, Civil Division,
U.S. Department of Justice, Washington,
DC, for respondent. With her on the brief
were Frank W. Hunger, Assistant Attorney
General, David M. Cohen, Director, and Ka-
thryn A. Bleecker, Attorney. Of counsel was
Earl A. Sanders, Office of the General Coun-
sel, Office of Personnel Management, Wash-
ington, DC.

John R. Fornaciari, Ross & Hardies,
Washington, DC, filed a brief on behalf of
Mario S. Rosato.

Before NEWMAN, PLAGER, and
CLEVENGER, Circuit Judges.

PER CURIAM.

Beatrice M. Rosato petitions for review of
the decision of the Merit Systems Protection
Board ("Board"), No. BN0831960205–I–1, 75

M.S.P.R. 317, 1997 WL 233547 (1997), affirming the reconsideration decision of the Office of Personnel Management ("OPM") denying her any share of the current annuity being paid to her former husband. We affirm.

## I

Beatrice and Mario Rosato were divorced in Connecticut on July 11, 1988. As a federal employee, Mr. Rosato was entitled to certain benefits, including an annuity payable in his lifetime on his retirement. Federal law contemplates that a federal employee may yield such benefits to a spouse in divorce proceedings. In particular, the law provides that:

> [p]ayments under this subchapter which would otherwise be made to an employee, Member, or annuitant based on service of that individual shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of —
>
> > (A) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.

5 U.S.C. § 8345(j)(1) (1994).

■ It is well-settled that section 8345(j)(1) "authorizes [OPM] to comply with an appropriate court decree of divorce or property settlement of an employee who is entitled to payments pursuant to the Civil Service Retirement System." *Donlan v. Office of Personnel Management,* 907 F.2d 1132, 1133 (Fed.Cir.1990). To implement this statute, OPM has promulgated regulations that define when an order of divorce or property settlement is a "court order acceptable for processing." *See* 5 C.F.R. §§ 838.101(b)(1); 838.103; 838.301–838.306 (1997). The pertinent regulations specify that, to qualify for processing by OPM, the court order must identify the retirement system under which the annuity exists and expressly state the portion to which the former spouse is entitled under the court order. *See* 5 C.F.R. § 838.303; *see also* 5 C.F.R. § 838.305 (portion must be stated as a fixed amount, percentage, or fraction, or formula calculable solely from face of court order).

In the event OPM receives an application from a former spouse for benefits pursuant to a divorce decree, and the application fails to comply with the regulations defining an order acceptable for processing, OPM notifies the applicant of the specific reasons for disapproving the application. *See* 5 C.F.R. § 838.424 (1997). The applicant then has an opportunity to cure any error in the application and to reapply for benefits.

The pertinent regulations also state that "OPM must comply with court orders, decrees, or court-approved property settlement agreements . . . ." 5 C.F.R. § 838.101(a)(1). Moreover, OPM's regulations direct that:

> In executing court orders under this part, OPM *must honor the clear instructions of the court. Instructions must be specific and unambiguous.* OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. *Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.*

5 C.F.R. § 838.101(a)(2) (emphasis supplied).

■ Federal law thus provides the method whereby divorcing spouses may divide their entitlements to federal employee benefits. The statute and rules are clear: OPM will not look behind a state court divorce decree or property settlement order to ascertain the intent of the parties. So long as the decree or order complies with the specificity requirements of the regulations, which implement the statutory requirement that the decree or order "expressly" direct payment to another than the employee, OPM will follow its prescriptions. An order lacking the requisite specificity will be rejected by OPM, with an opportunity for the applicant to cure any indicated error.

## II

The Rosato marriage was dissolved on July 11, 1988, by judgment of the Superior Court, Judicial District of Waterbury, Con-

necticut, entered by Judge Thelma Santos. With regard to Mr. Rosato's federal employee benefits, the judgment states: "And that the wife is to retain any benefits in the husbands pension plan which he currently has, as his spouse."

Mr. Rosato retired from Federal service on January 2, 1992. Thereafter, Mrs. Rosato requested that OPM provide her with a portion of her husband's lifetime annuity. OPM denied Mrs. Rosato's request on the ground that the divorce decree, inter alia, did not satisfy the specificity requirements to make it acceptable for processing. Mrs. Rosato's counsel filed a Motion for Clarification in the Connecticut Superior Court on December 21, 1994. The motion requested that the court "clarify its decision and set forth the exact percentage interest of the plaintiff's [Mr. Rosato's] pension which is due to the defendant [Mrs. Rosato]." In response, the Superior Court held a hearing on March 25, 1995. At the hearing, Judge Santos identified the property interest at stake in the original divorce decree as Mr. Rosato's lifetime annuity, by reference to the fact that the benefits to Mrs. Rosato would not begin to flow until Mr. Rosato "retired and the benefits began to run." *Rosato v. Rosato*, No. FA–86–0076997S (Conn.Sup.Ct. Mar. 29, 1995). This language does not refer to a surviving spouse annuity, another form of benefit that the Rosatos could have apportioned in their divorce proceedings. According to Judge Santos, Mrs. Rosato was entitled to a share of Mr. Rosato's lifetime annuity to make up for the short five-year time during which Mr. Rosato was obligated to pay $175 per week in alimony. Accordingly, the Superior Court clarified its original divorce judgment: "it was the Court's intention to award the defendant fifty-five percent of that pension." *Id.* The words "that pension" unmistakably referred to Mr. Rosato's lifetime annuity.

## III

On April 17, 1995, Mr. Rosato appealed from Judge Santos's order clarifying the original divorce judgment. Mrs. Rosato moved the Superior Court for an award against Mr. Rosato for attorney fees and costs to defend the appeal lodged by Mr. Rosato. The Superior Court granted Mrs. Rosato's motion, noting that Mr. Rosato had failed to disclose in his sworn financial affidavit that he had won $310,000 on September 16, 1994, at Trump Plaza Hotel and Casino, entitling him to equal installments of $15,525 per year for 20 years. Furthermore, Mr. Rosato had failed to disclose the value of his IRA until he was pressed during testimony. *See Rosato*, No. FA–86–0076997S (Conn. Sup.Ct. June 21, 1995).

Mr. Rosato's appeal was submitted for decision on the briefs on December 14, 1995. *See Rosato v. Rosato*, 40 Conn.App. 533, 671 A.2d 838 (Conn.App.1996). Under Connecticut law, the Superior Court has jurisdiction to clarify its previous decrees, but does not have jurisdiction to modify its previous decrees. Mr. Rosato argued that the March 29, 1995, order constituted an untimely property assignment different from that originally awarded in the July 11, 1988, divorce judgment.

We must pause for a moment in the narrative to explain how Mr. Rosato could make such an argument to the Connecticut appellate court, given that Judge Santos had gone out of her way to emphasize that the original decree dealt only with Mr. Rosato's lifetime annuity, and that her clarification order also dealt solely with that property interest. The explanation lies in the editing job someone did on the original divorce judgment. As we noted above, the original divorce judgment specified that "the wife is to retain any benefits in the husband's pension plan which *he* currently has, as his spouse" (emphasis supplied). Before the Connecticut appellate court, someone edited the original decree to read "the wife is to retain any benefits in the husband's pension plan which *[she]* currently has, as his spouse" (emphasis supplied). The word "she" is recited in the appellate court opinion with brackets around it, to signify that the word had been changed. In briefs to this court, both Mr. Rosato and the United States contend that the Connecticut appellate court itself did the editing job on the original divorce judgment. We have no way to test that contention, but–as will become evident–the change from "he" to "she" is a cruel mistake that, unless corrected, will deprive

Mrs. Rosato of her 55 percent share of Mr. Rosato's current lifetime annuity.

If the original decree had indeed read "she"—which it most clearly did not—then the interest at stake in the original decree would be a spousal survivorship interest to follow on Mr. Rosato's death. This is so because that is the only interest that Mrs. Rosato currently had, vis-à-vis Mr. Rosato, at the time of the divorce. She had no claim to Mr. Rosato's lifetime annuity, payable upon his retirement, because he had made the payments to fund that annuity. By specifying in the original decree the rights that "he" currently had, the parties identified Mr. Rosato's lifetime annuity, being the rights that he then currently had as a result of his contributions to the retirement fund.

Because someone convinced the Connecticut appellate court that the original decree only awarded benefits that "she" currently had, Mrs. Rosato was destined to lose in front of that court, because the clarification order referred to rights that "he" currently had, namely his lifetime annuity, whereas the original judgment, as erroneously understood by the Connecticut appellate court, conveyed a survivorship interest to Mrs. Rosato. In the mistaken scenario, the Connecticut appellate court's decision that the clarification was instead an assignment of a new property right—an interest in Mr. Rosato's lifetime annuity—seems correct. *See Rosato,* 671 A.2d at 840. The rub is that someone fooled that court into thinking that the original decree dealt only with the rights that Mrs. Rosato had as of the divorce date. *See id.* ("The practical effect of the new order in this case was to alter the original property assignment interest from a survivorship interest to a present interest of 55 percent . . . .").

Because of the editing job done on the original decree, the appellate court thus ruled that the Superior Court lacked jurisdiction to enter its order awarding 55 percent of Mr. Rosato's lifetime annuity to Mrs. Rosato. See *id.* Mrs. Rosato did not appeal from that decision.

## IV

Mrs. Rosato thereafter contacted OPM, asking about her entitlement to a former spouse survivor's annuity, the interest that the Connecticut appellate court mistakenly assigned to her. OPM informed Mrs. Rosato that back in 1991 Mr. Rosato had indicated his intention to perfect a former spouse survivor's annuity for Mrs. Rosato, but that shortly after his retirement, he had changed his election to provide a survivor's annuity of "0%." Consequently, OPM informed Mrs. Rosato on March 13, 1996, that Mr. Rosato had deprived her of any claim to a survivor's annuity. Furthermore, as OPM correctly read the original July 11, 1988, divorce judgment, the divorce court did *not* award Mrs. Rosato a survivor's annuity.

No doubt thoroughly confused by OPM's response—recall that the Connecticut appellate court had recently told Mrs. Rosato that her only interest in the divorce decree was a survivor's annuity—Mrs. Rosato petitioned OPM for reconsideration. On June 24, 1996, OPM denied Mrs. Rosato's request for reconsideration. OPM repeated its view that the original divorce decree did not award Mrs. Rosato a survivor's annuity. As for any claim Mrs. Rosato might have to Mr. Rosato's current lifetime annuity, OPM's reconsideration decision stated that a "review of your divorce decree and subsequent court orders does not indicate that the court(s) have awarded you a portion of Mr. Rosato's annuity."

OPM's reconsideration decision is, politely stated, puzzling. It opines that a review of the original divorce decree "did not indicate that you were awarded a former spouse survivor['s] annuity" and also that the same kind of review "[did] not indicate that the court(s) have awarded you a portion of Mr. Rosato's [lifetime] annuity." OPM's view of the situation is untenable, given the clear intent of the Connecticut Superior Court to provide Mrs. Rosato with a share of Mr. Rosato's current lifetime annuity. Unfortunately for Mrs. Rosato, OPM can overlook its incorrect interpretation of the divorce decree, because of its regulation that requires disputes about such decrees to be sorted out in the state courts.

## V

Mrs. Rosato timely appealed the OPM reconsideration decision to the Board. *See Ro-*

*sato v. Office of Personnel Management,* 75 M.S.P.R. 317, 1997 WL 233547 (1996). In her appeal, she only challenged OPM's denial of her right to share in Mr. Rosato's lifetime annuity. The decision of the Administrative Judge, which became the final decision of the Board when it denied review of the Administrative Judge's decision, upheld OPM's reconsideration decision. Although the Administrative Judge correctly quoted the words of the original decree ("benefits in the husband's pension plan which he currently has . . ."), the editing job done on appeal in Connecticut was unnoticed. *See id., slip op.* at 1378. Instead, the Administrative Judge woodenly noted that since the appellate court nullified the attempt to clarify the original divorce judgment, all that is left is the original decree, which the Connecticut appellate court—because of its misreading of the original divorce judgment—interpreted to convey only rights to a survivor's annuity. Therefore, Mrs. Rosato could lay no claim to a share of Mr. Rosato's current lifetime annuity. *See id.* at 3.

## VI

Mrs. Rosato timely appealed the Board's final decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (Supp.1998). We may overturn the Board's decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; or if obtained without required legal process, or if unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994).

■ From the lengthy narration of the facts of this case, it is apparent that something arbitrary or capricious has indeed occurred in this case. That something is the switching of the word "he" to the word "she" during the Connecticut appellate process. By simply having added the "s" to "he," Mrs. Rosato's claim to a share of Mr. Rosato's current lifetime annuity must fail at this time. This is so because the current state of the Connecticut court decisions is that Mrs. Rosato's original divorce decree only awarded her a claim to a survivor's annuity. Under the regulations that govern this case, OPM is obligated to follow the dictates of the state appellate court decision (even when, as here, it knows that to do so contravenes the intent of the state court). In short, OPM has strapped itself to wooden, even unthinking, adherence to the state court decision. Under the terms of the Connecticut appellate court decision, Mrs. Rosato cannot prevail because she does not contest her ineligibility for a survivor's annuity. She can only prevail if the Connecticut appellate court is willing to modify its judgment to correct the "edit job" error that someone made on the original divorce judgment's language.

The damage done to Mrs. Rosato by the error made during the appellate process in Connecticut cannot be overstated. Not only has Mrs. Rosato lost a source of needed income, she apparently loses claim to medical insurance benefits unless the error made in Connecticut, which the United States says was "deliberately" made by the Connecticut appeals court itself, is corrected. We find it surprising that the Connecticut appellate court would deliberately alter the language of the original divorce decree to deprive the Superior Court of jurisdiction to make a housekeeping clarification of a judgment concerning division of Mr. Rosato's current lifetime annuity. Such an alteration of language is especially surprising in light of Judge Santos's desire to provide Mrs. Rosato with an income stream during Mr. Rosato's lifetime, to compensate for the short alimony period in the divorce judgment.

In any event, there seem to be avenues Mrs. Rosato may pursue to seek justice in this case. Chapter 71 of the Rules of Appellate Procedure, as reported in West's Connecticut Rules of Court, Rules of Practice, Rules of Appellate Procedure, specifies in section 71–5 that a motion for reargument or reconsideration will not be entertained unless filed within ten days of the decision being challenged. *See* Practice Book (1998 Rev.) § 71–5. Section 60–1 ("Rules to Be Liberally Interpreted") states that "[t]he design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book (1998 Rev.) 60–1. Section 60–3 ("Suspension of the

Rules") provides that "[i]n the interest of expediting decision, or for other good cause shown, the court ... may suspend the requirements ... of any of these rules ... on motion of a party or on its own motion...." Practice Book (1998 Rev. ) § 60–3. We have no means by which to communicate with the Connecticut appellate court to bring to its attention the injustice that has befallen Mrs. Rosato. Therefore, we cannot urge the court to suspend the time limit of section 71–5 in order to get to the bottom of who made the editing error ("he" switched to "she"), and if the error was not made deliberately by the court itself, to deal appropriately with the person or persons who caused the court to misread the original divorce decree. *Cf. Veterans Mem'l. Med. Ctr. v. Townsend,* 49 Conn.App. 198, 201, 712 A.2d 993 (1998) (relying on section 60–1 ("Rules to be Interpreted Liberally") to allow a writ of error where following other rules would result in "a serious deprivation of a fundamental right of due process."); *Bushy v. Forster,* 236 Conn. 451, 452–53, 673 A.2d 109 (1996) (invoking authority under § 4187 [now § 60–3] to correct the dismissal of an appeal because of an "unexplained" technical error in the judgment papers); *State v. Phu Dinh Le,* 17 Conn.App. 339, 342–43, 552 A.2d 448 (1989) ("Because we find that the defendant's claim is one that involves a truly extraordinary situation, where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings, we will, to avoid a miscarriage of justice, invoke our discretionary authority [under § 4187, now § 60–3].").

Because of the regulations that OPM has imposed on itself in cases such as this, it has no duty to look behind a court order and no authority to refuse to accept an order that simply is wrong, on its face, as is the case here. Consequently, we lack the authority to engage the United States, through OPM, in the process of seeking correction by the Connecticut appellate court of the costly error in its decision.

Mrs. Rosato, armed with this opinion, is of course free immediately to file a reconsideration motion with the Connecticut appellate court, seeking relief from the ten-day filing rule, in the interests of justice and for good cause shown. If the Connecticut appellate court deliberately altered the original divorce decree, a reconsideration motion would afford the court with an opportunity to learn of the harm that the alteration has caused. If, on the other hand, the Connecticut court was led into the error by others, presumably the court would wish to afford relief to Mrs. Rosato and to address the consequences to those responsible for the court's having been misled.

### VII

For the reasons set forth above, Mrs. Rosato can lay no claim to any portion of Mr. Rosato's current lifetime annuity at this time. Should she prevail in seeking reconsideration by the Connecticut appellate court, she could again apply to OPM seeking the 55 percent share of Mr. Rosato's lifetime annuity that the Superior Court sought to award to her. The final decision of the Board is therefore affirmed.

### COSTS

No costs.

AFFIRMED.