## MARIO S. ROSATO *v.* BEATRICE MARTONE ROSATO
### (SC 16250)

Norcott, Katz, Palmer, Sullivan and Flynn, Js.*

Argued September 20, 2000—officially released March 6, 2001

*Beatrice Martone Rosato*, pro se, the defendant.

---

* The listing of the justices reflects their seniority status on this court as of the date of argument.

*Mark M. Wrenn,* with whom, on the brief, was *James P. Caulfield,* for the appellee (plaintiff).

*Opinion*

PER CURIAM. This appeal requires that we determine whether the Appellate Court improperly reversed the trial court's judgment of financial orders because of a misreading of the trial court's original order regarding the defendant's interest in the plaintiff's pension annuity benefits. *Rosato* v. *Rosato,* 40 Conn. App. 533, 536, 671 A.2d 838 (1996). Because we cannot conclusively determine, in this factually complicated and procedurally complex case, whether the Appellate Court properly reconciled the ambiguous original order of the trial court with an equally ambiguous answer to the plaintiff's motion for clarification of that order, the case must be remanded to the trial court for a new determination of the financial orders.[1] While we recognize that this case has lingered long in our court system, we strongly believe that the interests of justice require no less than a redetermination of the entire "mosaic" that constitutes the complete financial order package. *Sunbury* v. *Sunbury,* 210 Conn. 170, 175, 553 A.2d 612 (1989).

The factual and procedural background of this case is best described as labyrinthine. The plaintiff, Mario S. Rosato, and the defendant, Beatrice Martone Rosato, had been married for almost twenty-nine years when their marriage was dissolved on July 11, 1988. At the

---

[1] At the outset, we note that we are not alone in this quandary. Several other courts and administrative agencies along the path of this procedural nightmare engendered by this case have evinced confusion about the true nature of both the trial court's original and clarified intent regarding the defendant's awarded interest in the plaintiff's pension. *Rosato* v. *Rosato,* 53 Conn. App. 387, 388–90, 731 A.2d 323 (1999); *Rosato* v. *Office of Personnel Management,* United States Court of Appeals for the Federal Circuit, Docket No. 97-3332 (December 16, 1997); *Rosato* v. *Office of Personnel Management,* 165 F.3d 1377, 1380 (Fed. Cir. 1999).

time of the dissolution, the plaintiff was fifty-eight years old and had been an employee of the United States Postal Service (post office) for more than twenty-four years. The plaintiff's base salary was approximately $37,500. Additionally, the plaintiff earned between $8000 and $12,000 in overtime annually. The plaintiff also had a pension with the post office. It is this pension that is at the heart of the present appeal.

When first addressing the matter of the plaintiff's pension in the order of dissolution, the trial court, *Santos, J.*, ordered that "the wife is to retain any benefits in the husband's pension plan which *he* currently has, as his spouse."[2] (Emphasis added.) The plaintiff retired at the end of 1991, and began to collect his lifetime pension benefits. Believing that she was entitled to a share of this lifetime benefit, the defendant contacted the federal Office of Personnel Management (office) in 1992 to request payment of those benefits. The office declined her request for payment on the ground that the trial court's order did not "explicitly [divide]" the plaintiff's civil service retirement benefits.

Thereafter, in 1994, the defendant filed a motion for clarification of the trial court's order in which she requested that the court "set forth the exact percentage interest of the plaintiff's pension which is due to the defendant." The trial court's response to this request constitutes another facet of the ambiguity that pervades this appeal. On March 29, 1995, the trial court granted

---

[2] In addition to the matter of the plaintiff's pension, the trial court also ordered that: (1) the plaintiff pay the defendant alimony in the sum of $175 per week for a period of five years, with the alimony to terminate on the event of the defendant's death, remarriage or cohabitation; (2) the parties retain their one-half interest in the family condominium and that the defendant be allowed to continue to live there for a period of five years at which time, if the unit was sold, the proceeds are to be divided equally between the parties; (3) the parties equally divide any of the plaintiff's remaining investments; and (4) the plaintiff pay the defendant's attorney's fees of $3000 within ninety days of the order.

the defendant's motion and indicated that its original intention was to award the defendant 55 percent of the plaintiff's pension benefits.[3] The plaintiff appealed claiming that the trial court's original order granted the defendant only a spousal survivorship interest in his pension rather than an interest in his lifetime benefits.[4] At the time of the dissolution, the plaintiff claimed that a spousal survivorship interest was all that the defendant was entitled to pursuant to the benefit plan. The plaintiff argued that the trial court's clarification order was an improper modification of the original property award.

The Appellate Court reversed the trial court's clarification order concluding that the trial court improperly had modified a property award in violation of General Statutes § 46b-81.[5] *Rosato* v. *Rosato*, supra, 40 Conn.

---

[3] The trial court's order provides in pertinent part: "I believe in terms of the transcript as I've reviewed it, that at the time the defendant had as a survivor a fifty-five percent interest.

"Now, even though that percentage would have been taken in a different context, it was the Court's intention because I only ordered—I believe it was five years of alimony at one hundred and seventy-five dollars per week for a [twenty-nine] year marriage—and based on what I heard as testimony, the Court did consider certain issues of fault that it would have been the Court's intention that the percentage, the fifty-five percent, would apply to the current value of the pension. . . ."

[4] Whether the trial court's order classified the defendant's interest as a survivorship interest or an interest in the plaintiff's lifetime benefits is crucial. If the original order gave the defendant a survivorship interest in the plaintiff's pension, then the defendant would not be entitled to receive any payments during the plaintiff's lifetime. Thus, the order would allow the defendant to retain the survivorship benefits in the plaintiff's pension that she acquired as a spouse, and only upon the plaintiff's death would she be entitled to receive proceeds from such funds. If, however, the original order granted the defendant a current interest in the plaintiff's lifetime pension benefits and not a survivorship interest, then the defendant had rights upon the plaintiff's retirement, regardless of when the plaintiff dies.

[5] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband

App. 536. The Appellate Court, in explaining its decision, changed the language of the trial court's original order by writing, " 'the wife is to retain any benefits in the husband's pension plan which [*she*] currently has, as his spouse.' "[6] (Emphasis added.) Id., 534. The Appellate Court construed the trial court's original order as granting the defendant spousal survivorship benefits, which the Appellate Court concluded were the only benefits that the defendant had at the time of the divorce.[7] Id., 535. Thus, in reversing the clarification order, it appears that the Appellate Court left in place its version of the original order, which the Appellate Court deemed was an award of only a survivorship interest.

Thereafter, the defendant again contacted the office to ascertain her survivorship benefits that she understood the Appellate Court to have ordered. The office concluded that, notwithstanding the Appellate Court's decision, the trial court's original order granted lifetime benefits. The office repeated that it could not process the defendant's request for these benefits because the trial court's order did not specify the amount or percentage of her interest in the plaintiff's *lifetime pension benefits.*[8] The defendant then appealed this decision to

---

or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

[6] From a review of the parties' briefs filed in the Appellate Court, it appears that the Appellate Court, sua sponte, changed the language from "he" to "[she]" in the award, perhaps in an attempt to clarify the trial court's original order. In any event, it is not clear why the word "she" was substituted for the word "he" in the opinion of the Appellate Court.

[7] The Appellate Court interpreted the order as "simply allow[ing] the [wife] to retain the survivorship benefits in the [husband's] pension that she acquired as a spouse." *Rosato* v. *Rosato*, supra, 40 Conn. App. 535.

[8] On March 13, 1996, the office sent the defendant notice that her request for lifetime benefits was denied because (1) of the infirmity in the trial court's original order, and (2) in 1992, the plaintiff had changed his election to provide for a former spouse survivor annuity as follows: "Survivor annuity equal to 0% of my annuity." In response to the defendant's request for a reconsideration, on June 24, 1996, the office denied the defendant the relief that she sought, stating as follows: "Since your divorce decree did not 'expressly' award you a former spouse survivor annuity, you are ineligible

an administrative law judge. The administrative law judge affirmed the office's ruling, and the decision became final when the Merit Systems Protection Board (board), the federal reviewing agency, denied the defendant's petition for review.[9]

The defendant appealed the board's decision to the United States Court of Appeals for the Federal Circuit, which, in 1997, reversed that ruling. *Rosato* v. *Office of Personnel Management,* 132 F.3d 55 (Fed. Cir. 1997). The Court of Appeals concluded: (1) the Appellate Court had misinterpreted the trial court's original order as limiting the defendant to only a survivorship interest; and (2) the board should have recognized the Appellate Court's error and reversed the office's denial of the defendant's claim, especially when the trial court had provided the required information relating to the defendant's share of the contested benefits in its clarification.[10] *Rosato* v. *Office of Personnel Management,* United States Court of Appeals for the Federal Circuit, Docket No. 97-3332 (December 16, 1997). Further, the Court of Appeals remanded the case with direction that the office begin past and future benefit payments to the defendant. Id.

This unfortunate saga, however, did not end with that remand. Pursuant to the order of the Court of Appeals, in 1998, the office began making monthly benefit payments of approximately $1300, together with a lump sum payment of $43,908.70, which represented three

for a former spouse survivor annuity based upon court order. Also, since [the plaintiff] did not elect a reduced annuity at the time of his retirement to provide for a former spouse survivor annuity for you, you are ineligible for a former spouse survivor annuity based on annuitant's election."

[9] The plaintiff previously intervened as a party in the administrative action initiated by the defendant.

[10] Consistent with the entire construct of this case, the Court of Appeals subsequently stated that "[the office's] reconsideration decision is, politely stated, puzzling." *Rosato* v. *Office of Personnel Management,* 165 F.3d 1377, 1380 (Fed. Cir. 1999).

years of arrearages to the defendant. Subsequently, however, because of a procedural infirmity regarding the plaintiff's failure to receive notice of the appeal from the board's decision, the Court of Appeals reversed itself on January 25, 1999. *Rosato v. Office of Personnel Management*, 165 F.3d 1377 (Fed. Cir. 1999). The Court of Appeals concluded that it lacked the authority to order lifetime benefits to the defendant because, "[u]nder the regulations that govern this case, [the office] is obligated to follow the dictates of the state [A]ppellate [C]ourt decision (even when, as here, it knows that to do so contravenes the intent of the state court). In short, [the office] has strapped itself to wooden, even unthinking, adherence to the state court decision. Under the terms of the Connecticut [A]ppellate [C]ourt decision, [the defendant] cannot prevail because she does not contest her ineligibility for a survivor's annuity." Id., 1381. Nonetheless, the Court of Appeals urged the defendant to request the Appellate Court to reconsider its decision by stating "[s]hould she prevail in seeking reconsideration by the Connecticut [A]ppellate[C]ourt, she could again apply to [the office] seeking the 55 percent share of [the plaintiff's] lifetime annuity that the Superior Court sought to award to her." Id., 1382.

Based on the decisions of the Court of Appeals, the defendant filed a series of motions in the Appellate Court seeking a reconsideration of that its decision. The Appellate Court dismissed these motions as untimely.[11] *Rosato v. Rosato*, 53 Conn. App. 387, 389, 731 A.2d 323 (1999). Thereafter, in order to appeal the Appellate Court's 1996 judgment, the defendant filed a motion for permission to file a late petition for certification in this court, which we granted on November 30, 1999. This appeal is before us on our grant of the defendant's petition for certification on February 16, 2000.

---

[11] The defendant was appearing pro se at this point.

The certified issue in this appeal is as follows: "Did the Appellate Court improperly reverse the judgment of the trial court due to a misreading of the trial court's order regarding the defendant wife's interest in the plaintiff husband's lifetime annuity?" *Rosato* v. *Rosato*, 252 Conn. 930, 746 A.2d 793 (2000). After structuring a certified question and hearing oral argument, we have, on occasion, realized that the certified question is inadequate to resolve the case before us. See *Stamford Hospital* v. *Vega*, 236 Conn. 646, 648 n.1, 674 A.2d 821 (1996). This is one of those occasions. Thus, we have now determined that the dispositive issue in this appeal is whether the trial court's original order granted the defendant an interest in the plaintiff's *lifetime pension*, or only a *survivorship interest* upon the plaintiff's death.

In this appeal, the primary dispute revolves around the meaning of the trial court's original order. After awarding the defendant alimony for a term of five years at the rate of $175 per week, the trial court ordered that "[t]he wife is to retain any benefits in the husband's pension which he *currently* has, as his spouse." (Emphasis added.) The defendant argues that the trial court's original order granted her an interest in the plaintiff's lifetime pension benefits. The defendant contends, therefore, that once the plaintiff began to collect his pension shortly after his retirement, she was entitled to a share of his lifetime benefits that he currently was enjoying. Further, the defendant claims that the trial court's clarification of its original order set the percentage of those benefits at 55 percent. In response, the plaintiff relies on § 46b-81, which provides for the distribution of marital property in a dissolution proceeding. Pointing out that we previously have held that § 46b-81 (a)[12] involves the assignment of *marital* assets; *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636

---

[12] See footnote 5 of this opinion for the text of § 46b-81 (a).

(1990); the plaintiff claims that the pension here did not amount to a marital asset because his rights in the pension did not vest until *after* the date of the dissolution and, therefore, his current interest in the benefits at the time of dissolution was zero. The award, he contends, amounts to a survivorship interest only. Also, as a part of his claim on appeal, the plaintiff argues that the clarification was in fact an improper modification of an award in violation of § 46b-81, because to award the defendant a 55 percent lifetime benefit interest contravened the original award of a survivorship interest, which was the only interest she had at the time of the dissolution.[13] Our conclusion that only a remand to the trial court will do justice in this case is premised on several distinct concerns that exacerbate the confused state of these proceedings and are unavoidable in our review of this record.

I

The first of these concerns involves the trial court's determination in its clarification that the defendant receive 55 percent of the plaintiff's pension. It is something of an understatement to say that this percentage adds to the overall confusion. Regarding this portion of the award, the trial court stated: "I believe in terms of the transcript as I've reviewed it, that at the time, the defendant had as a survivor a fifty-five percent interest. Now, even though that percentage would have been taken in a different context, it was the Court's intention because I only ordered—I believe it was five years of alimony at one hundred and seventy-five dollars per week for a [twenty-nine] year marriage—and based on what I heard as testimony, the Court did consider certain issues of fault that it would have been the Court's

---

[13] Moreover, the plaintiff contends that the defendant was not entitled to any award of benefits with regard to the pension because the survivorship interest that she had at the time of the dissolution was zero.

intention that the percentage, the fifty-five percent, would apply to the current value of the pension. . . . [I]t was the intention of the Court that the defendant share in a percentage of fifty-five percent as to that pension."[14] Although we reasonably might conclude from this, as apparently did the Court of Appeals, that the trial court intended to award 55 percent of the plaintiff's lifetime pension benefits, we note that the trial court never specifically referred to 55 percent of the *lifetime pension benefits*. Thus, while the clarification arguably sheds light on what the trial court meant by the word "currently" in its original order—in the context of lifetime benefits—it also should be noted that the 55 percent figure arose in a completely different context—the survivorship context—when Margaret Carter, an employee benefits specialist from the post office, testified that the defendant's annual *survivorship* benefits would be 55 percent of the annual lifetime benefits paid.

Even if we ultimately were to conclude that the trial court's clarification was not a modification because, in light of the entire picture, the overall intent of the original order coupled with the clarification was, in fairness, to award the defendant a share of the plaintiff's lifetime pension benefits,[15] we are faced with further complications that stem from the financial awards in this record.

## II

If the defendant is correct that the trial court originally awarded her a portion of a lifetime benefit and

---

[14] Later, in that same proceeding, the trial court added: "So I am clarifying the judgment with respect to only that provision which refers to the pension. And with respect to that, it was the Court's intention to award the defendant fifty-five percent of that pension."

[15] We note that both the office and the Court of Appeals have interpreted the original order as granting the defendant a percentage of her lifetime benefits without concluding what that percentage might be because of the restriction on their jurisdiction. *Rosato* v. *Office of Personnel Management*, supra, 165 F.3d 1380–81.

appropriately clarified that intent in its supplemental ruling, then we are faced with the issue raised as the plaintiff's alternate ground for affirmance: that the pension was nonvested and, therefore, was not marital property subject to distribution. If the plaintiff is correct that the pension was not marital property subject to distribution, then the trial court improperly awarded 55 percent of the lifetime benefit.[16]

From our review of the record, the question of the vested or nonvested status of the pension contributes to the overall confusion in this case. Our examination of this problem area begins with a review of the evidence before the trial court regarding whether the pension was vested, and whether the plaintiff had a current right to collect pension benefits at the time of the dissolution.

During the dissolution proceedings, Carter testified that the plaintiff was not eligible to retire until some time in 1989. Accordingly, when asked to determine what benefits the plaintiff would receive were he to retire on the date of the dissolution, July 11, 1988, Carter testified that the plaintiff would receive only a return of his own contributions to the pension plan, without interest, because he was not eligible to retire. The plaintiff now relies on this testimony to support his claim that the current value of his pension benefits at the time of the dissolution was zero because his rights did not vest until *after* the date of the dissolution. Curiously, Carter was never asked and never testified about when or if the plaintiff's rights in the pension had already vested. The distinction between eligibility and actual vesting is important because a person's rights in a pension may vest and that person still may have to wait a

---

[16] While we have determined that *vested* pension benefits are not mere expectancies and, therefore, are properly distributable as marital assets; see *Krafick* v. *Krafick*, 234 Conn. 783, 798, 663 A.2d 365 (1995); we left open the question of whether *nonvested* pensions are distributable. Id., 798–99 n.23.

period of time before he or she is eligible to collect. Conversely, another person may be eligible to retire before that person's rights vest in the plan. During the dissolution proceedings, this important distinction was not addressed.[17]

Further complicating the issue is the fact that Carter's testimony was never clear about when the plaintiff was eligible to retire. Early in her testimony, Carter stated that the plaintiff was eligible to retire on December 26, 1989. Later, Carter testified that the plaintiff was eligible to retire on January 10, 1989, almost twelve months earlier than she previously had indicated. The latter date appears to coincide with the plaintiff's attainment of the anniversary of his twenty-fifth year of service and sixty years of age. The plaintiff contends that his rights did not vest until he attained either twenty-five years of service or reached sixty years of age. If Carter meant to say vest rather than retire during her later testimony, then on the date of the dissolution the plaintiff would have been either six or eighteen months away from vesting, but none of this is clear from the record. What is apparent to this court is that this confusion regarding when the plaintiff was eligible to retire and whether Carter meant to say vest rather than retire, strengthens our belief that a remand for a new hearing on the financial orders is necessary in order fairly to resolve this dispute.

---

[17] Evidence that directly addressed the question of the date of the plaintiff's vesting was contained in a letter dated September 10, 1987, which was introduced and admitted into evidence during Carter's testimony. The author of the letter, Doris Giles, who was manager of personnel services for the post office and also Carter's supervisor, wrote to the defendant's attorney at that time that the plaintiff's vesting period was only *five* years. If true, then the plaintiff's pension clearly was marital property subject to distribution pursuant to § 46b-81. See *Krafick* v. *Krafick*, 234 Conn. 783, 798, 663 A.2d 365 (1995). Unfortunately, this crucial evidence seems to have been ignored by all involved, as the focus of Carter's testimony revolved around the question of the plaintiff's eligibility to retire and what benefits he would receive were he hypothetically to leave his job on the day Carter testified.

In reaching our conclusion, we are guided by a decision of the Appellate Court in *Koper* v. *Koper*, 17 Conn. App. 480, 553 A.2d 1162 (1989). In *Koper*, the Appellate Court reversed a judgment of dissolution after concluding that the trial court, in an articulation of the basis for the financial orders, had failed to explain the basis of its original decision, and had, in fact, changed its position on the issue of fault. Id., 484. Concluding that the original decision and the articulation were impermissibly contradictory, the Appellate Court remanded the case to the trial court for a new trial because any attempt to resolve the conflict on the appellate level would have placed the court "in the untenable position of retrying the facts." Id.

We find ourselves in a similar position to the court in *Koper*. It is clear to us that without the benefit of a definite resolution of the questions surrounding all the relevant pension information, we cannot be absolutely certain whether the Appellate Court correctly concluded that the trial court improperly had modified its original award order. Keeping in mind that we ultimately are charged with the responsibility of doing justice in the extraordinary circumstances of this case, we conclude that: (1) we cannot determine with certainty whether the trial court's original order granted the defendant an interest in the plaintiff's lifetime pension, or only a survivorship interest upon the plaintiff's death; (2) we cannot reconcile clearly whether the clarification order by the trial court was intended to award 55 percent of the plaintiff's lifetime pension benefits or survivorship rights; (3) the trial court should determine whether the plaintiff's pension benefits vested, and if they did vest, when did they vest; (4) we must set aside the Appellate Court's judgment because its interpretation of the trial court's order may well be flawed; and (5) for us to resolve all of the preceding issues might well cast us, to a great degree, in the role of a fact finder.

Thus, for the reasons set forth in this opinion, we find it necessary to reverse the judgment of the Appellate Court and remand the case for a new hearing to establish a new set of comprehensive financial orders, including a new alimony award.[18] We recognize that this unique case provides very little precedential value, and we hope not to see another of its kind again. Finally, given the longevity of these proceedings and with recognition of the patience of the parties involved, we strongly urge that this matter be given an expeditious reassignment for rehearing.[19]

The judgment of the Appellate Court is reversed and the case remanded to that court with direction to remand the case to the trial court for a new hearing on the financial orders.

---

[18] The remand for a new hearing on the financial orders necessarily will be before a different trial court than that which issued both the original order and the clarification. See *State* v. *Gonzales*, 186 Conn. 426, 436 n.7, 441 A.2d 852 (1982); *Quindazzi* v. *Quindazzi*, 56 Conn. App. 336, 337 n.1, 742 A.2d 838 (2000); *State* v. *Douglas*, 10 Conn. App. 103, 119, 522 A.2d 302 (1987); see also General Statutes § 51-183c ("[n]o judge of any court who tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the Supreme Court, may again try the case").

[19] We recognize that it is an open question whether nonvested pension benefits are subject to distribution in a dissolution order. *Krafick* v. *Krafick*, 234 Conn. 783, 798–99 n.23, 663 A.2d 365 (1995). Should the trial court conclude that the plaintiff's interest had not yet vested, this court retains jurisdiction on appeal to expedite a decision on this question should one become necessary.

