**Lore P. PARKER, Petitioner,**

v.

**OFFICE OF PERSONNEL**
**MANAGEMENT,**
**Respondent.**

No. 01–3075.

United States Court of Appeals,
Federal Circuit.

April 18, 2001.

Before RADER, GAJARSA, and DYK, Circuit Judges.

PER CURIAM.

The Office of Personnel Management (OPM) determined that Jack R. Parker's former spouse, Lore P. Parker, was entitled to 41.47% of Mr. Parker's Civil Service Retirement System (CSRS) annuity. On appeal to the Merit Systems Protection Board (Board), an administrative judge issued an initial decision affirming OPM's reconsideration decision with regard to the apportionment of Mr. Parker's annuity. *Parker v. Office of Pers. Mgmt.*, No. DE–0831–00–0001–I–1 (M.S.P.B. Dec. 13, 1999) (*Initial Decision*). Mrs. Parker seeks review of the administrative judge's initial decision, rendered final by the September 26, 2000, decision of the Board declining review. *Parker v. Office of Pers. Mgmt.*, No. DE–0831–00–0001–I–1, 87 M.S.P.R. 532 (M.S.P.B. Sept. 26, 2000) (*Final Order*). Because the Board's decision to affirm OPM's calculation of Mrs. Parker's entitlement to Mr. Parker's CSRS annuity is not arbitrary or capricious, and is supported by substantial evidence, this court *affirms*.

I.

Mr. and Mrs. Parker were married on December 28, 1963. At that time, Mr. Parker was on active duty in the United States Navy. He served in the military from February 24, 1961, through January 13, 1965. On January 5, 1976, Mr. Parker entered Federal civilian service. He remained employed by the Federal service until January 2, 1999, when he retired on a Voluntary Separation Incentive Plan. After he retired, Mr. Parker began to receive a gross CSRS monthly retirement annuity of $2,995.

Mr. and Mrs. Parker divorced in 1998, after thirty-four years of marriage. On January 15, 1998, the District Court of Bernalillo County, State of New Mexico, entered a final divorce decree. In conjunction with that final decree, the court entered a marital property settlement agreement, which stated in pertinent part:

### PENSION/PROFIT SHARING

Jack Parker has a retirement plan with the U.S. Navy Department under the NAWCWPNS–DET–ABQ accounts. *Lore shall be granted one half of all benefits and contributions,* including all government matching benefits, payments, interests and contributions as well as survivor retirement benefits, *made into this retirement plan up to the date of the entry of a Final Decree herein.* Jack Parker shall be granted any remaining amount in said plan.

*Initial Decision,* slip op. at 3 (emphasis added). The original divorce decree was amended by a court order on April 29, 1999, to add Mr. and Mrs. Parker's date of marriage.

On September 3, 1999, in response to Mrs. Parker's application for apportionment, OPM awarded Mrs. Parker 41.47% of Mr. Parker's CSRS annuity. The 41.47% was calculated as one half of 277 months of service during the marriage divided by 334 months of total creditable service. *Initial Decision,* slip op. at 3. In that initial decision, OPM also declined to award Mrs. Parker a former spouse survivor annuity. After Mrs. Parker requested reconsideration, OPM rescinded a portion of its decision and granted Mrs. Parker a former spouse survivor annuity benefit. OPM adhered, however, to its initial decision with respect to apportionment of Mr. Parker's CSRS annuity.

On appeal to the Board, Mrs. Parker did not dispute the formula used by OPM to calculate the apportionment of Mr. Parker's CSRS annuity, i.e., ½ multiplied by Mr. Parker's Federal service during the marriage divided by Mr. Parker's total creditable service as of the time of retirement. *Id.* at 4–5. Instead, according to the Board, Mrs. Parker merely disputed the number of months used in the formula's denominator. Specifically, Mrs. Parker argued that Mr. Parker's total service should not have included his military service from 1961 through 1965 because that service was her community property. *Id.* at 4.. Thus, according to Mrs. Parker's calculations, she was entitled to 48% of Mr. Parker's annuity. On December 9, 1999, four days before the Initial Decision issued, Mrs. Parker sent a letter to the administrative judge. This letter alleged that the marital settlement agreement contained a "clerical error" because it incorrectly included the phrase "up to the date of entry of the Final Decree" in the pension/profit sharing section, and because Mr. and Mrs. Parker agreed to split all of Mr. Parker's retirement benefits.

Based on OPM's computer records and calculations, 5 C.F.R Part 838, Appendix A to Subpart J, "Guidelines for Interpreting State Court Orders Dividing Civil Service Retirement Benefits" and 5 C.F.R. § 831.301, as well as Mr. Parker's application for retirement prior to age 62, the Board affirmed OPM's apportionment of Mr. Parker's annuity on December 13, 1999. *Initial Decision,* slip op. at 4–6.

On January 14, 2000, Mrs. Parker submitted a Petition for Review to the Board, stating: "After the appeal was filed, the State of New Mexico's Special Master requested the case be reopened to deal with the clerical errors in the Marital Settlement Agreement and Judge Walker, the presiding judge for the divorce has approved. The hearing date has not been set yet." Mrs. Parker also submitted a

letter she had sent to Mr. Parker on December 31, 1997, as evidence that both parties agreed to a 50% division of their total worth.

On September 26, 2000, the Board determined that Mrs. Parker did not present any new, previously unavailable evidence and that the administrative judge made no error in law or regulation affecting the outcome. *Final Order,* slip op. at 2. The Board did "not consider the appellant's submission, which was filed after the record closed on review. 5 C.F.R. § 1210.114(i)." *Id.* Mrs. Parker filed a timely petition for review by this court on December 23, 2000. This court has jurisdiction under 28 U.S.C. § 1295(a)(9) (1994).

## II.

This court affirms any Board decision not found to be: (1) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Cheeseman v. Office of Pers. Mgmt.,* 791 F.2d 138, 140 (Fed.Cir.1986).

On appeal to this court, Mrs. Parker asserts that the Board erred by failing to take into account that: (a) Mr. and Mrs. Parker both agreed to a 50% distribution of retirement benefits, as evidenced by a January 2, 1998, notarized agreement; and (b) the marital settlement agreement was intended by both parties to reflect the notarized agreement, despite the "clerical error" in the marital settlement agreement. Mrs. Parker also contends that a Special Master of the Second Judicial District in New Mexico, Judge James J. Loughren, incorporated the notarized agreement into the original marital settlement agreement on November 1, 2000.

Mrs. Parker has submitted a letter from the Special Master, dated March 9, 2001, which states: "The Special Master's findings and recommendations regarding division of annuity, survivors benefits for Ms. Parker, and other pending issues were announced on the record. These rulings are currently being transcribed and a special master's Report and Court Order will be forthcoming."

Section 8345(j)(1) of 5 U.S.C. "authorizes [OPM] to comply with an appropriate court decree of divorce or property settlement of an employee who is entitled to payments pursuant to the Civil Service Retirement System." *Donlan v. Office of Pers. Mgmt.,* 907 F.2d 1132, 1133 (Fed.Cir.1990). "OPM will not look behind a state court divorce decree or property settlement order to ascertain the intent of the parties." *Rosato v. Office of Pers. Mgmt.,* 165 F.3d 1377, 1378 (Fed.Cir.1999). Thus, OPM was not required to take into account the alleged intent of Mr. and Mrs. Parker, especially in light of the clear wording of the divorce decree.

As noted earlier, the divorce decree, via the marital settlement agreement, awarded Mrs. Parker half "of all benefits and contributions ... up to the date of the entry of a Final Decree herein." In other words, the New Mexico court awarded Mrs. Parker half of Mr. Parker's retirement benefits earned during the marriage. If, as Mrs. Parker argues, both parties did not intend to include the "clerical error" granting entitlement to Mrs. Parker only up to the date of the entry of a Final Decree, but instead intended to split all of Mr. Parker's retirement pay, Mrs. Parker's recourse is to seek correction of the divorce decree from the New Mexico state court. 5 C.F.R. §§ 838.224–.225 (2000).

As evidenced by a letter sent by the special master to this court on March 9,

2001, Mrs. Parker is currently attempting to do just that. Neither the March 9 letter nor any other evidence on record, however, supports Mrs. Parker's claim that the special master incorporated the January 2, 1998, notarized agreement into the original marital settlement agreement. Moreover, even assuming the special master incorporated the notarized agreement into the marital settlement agreement, the regulations state that OPM must honor a court order (i.e., the original amended divorce decree) until it receives a new court order that amends, supersedes, or sets aside the previous one. 5 C.F.R. § 838.224(b) (2000).

To date, Mrs. Parker has not submitted a court order from the District Court of Bernalillo County to OPM that further amends or supersedes the "Amended Final Decree" submitted by Mrs. Parker on April 29, 1999. Thus, the Board did not abuse its discretion or act arbitrarily or capriciously when it refused to consider as new evidence Mrs. Parker's allegations of "clerical errors" or the parties' intent when entering the marital settlement agreement.

Because Mrs. Parker has not submitted a new amending court order to OPM, Mrs. Parker's entitlement to Mr. Parker's CSRS annuity must be calculated based on the original marital settlement agreement

awarding Mrs. Parker half "of all benefits and contributions ... up to the date of the entry of a Final Decree." As stated in 5 C.F.R. § 838.621(c), "[a] court order that awards a portion of an employee annuity as of a specified date [i.e., January 15, 1998, the date of entry of the final divorce decree] before the employee's retirement [i.e., January 2, 1999] awards the former spouse a prorata share as defined in paragraph (a) of this section." 5 C.F.R. § 838.621(c) (2000). Paragraph (a) states: "Prorata share means one-half of the fraction whose numerator is the number of months of Federal civilian and military service that the employee performed during the marriage and whose denominator is the total number of months of Federal civilian and military service performed by the employee." 5 C.F.R. § 838.621(a) (2000); *see also* "Guidelines for Interpreting State Court Orders Dividing Civil Service Retirement Benefits," 5 C .F.R. Part 838, Subpart J, App. A, I.C.4.[1]

This court finds that the Board's determination of Mr. Parker's total creditable service as "27 years, 10 months, and 13 days, i.e., rounding out to 334 months" is correct and supported by substantial evidence. *Initial Decision,* slip op. at 5. Mr. Parker's total creditable service took place from February 24, 1961, through January 13, 1965 (military service, 3 years and 11 months, i .e., 47 months), and from Janu-

---

1. The "Guidelines" in the regulations "For Interpreting State Court Orders Dividing Civil Service Retirement Benefits" provide that orders containing "general language awarding a specified portion of a Federal employee's 'retirement benefits' ... but do not specify whether OPM should use 'credible service' or 'service worked' ... will be interpreted to award a portion of the annuity ... [based on] ... a portion of the annuity equal to the monthly annuity rate at the time of retirement times a fraction, the numerator of which is the number of months of service worked as of the date specified [i.e., the date of the entry of a Final Decree] and the denominator of which

is the number of months of 'creditable service' as of the time of retirement." 5 C.F.R. Part 838, Subpart J, App. A, I.C.4 (2000). The Board relies on these Guidelines, as well as 5 C.F.R § 831.301, to affirm OPM's calculation of Mrs. Parker's award as one half of Mr. Parker's monthly annuity rate multiplied by his time of Federal service during the marriage (i.e., months of service worked as of the date of the entry of a Final Decree) divided by his total time of Federal service, including both military and civil service, as well as unused sick leave (i.e., months of "creditable service" as of the time of retirement).

ary 5, 1976, through January 2, 1999 (civil service, 23 years, or 276 months), and included unused sick leave (approximately 11 months), 5 C.F.R. Part 838, Subpart J, App. A, III.C.1. Thus, the total creditable service, i.e., the denominator of the formula, adds up to 334 months. Mrs. Parker is therefore entitled to a share equal to 50% of 277/334, which is 41.47%, of Mr. Parker's CSRS annuity.

### III.

Mrs. Parker has not shown that the Board's reliance on the phrase "up to the date of the entry of a Final Decree herein" in the marital settlement agreement, or the formula itself used by OPM to calculate apportionment of Mr. Parker's annuity, was arbitrary or capricious, or that they involved an abuse of discretion or were otherwise not in accordance with relevant laws, rules, and regulations. Because substantial evidence supports the Board's decision to affirm OPM's calculation of Mrs. Parker's entitlement to Mr. Parker's CSRS annuity as 41.47%, this court affirms.