NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3453

MICHAEL J. COUVILLION, SR.,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED: April 26, 2005

_____

Before NEWMAN, SCHALL, and DYK, Circuit Judges.

DYK, Circuit Judge.

Michael J. Couvillion, Sr. ("Couvillion") appeals from the final decision of the Merit Systems Protection Board ("Board"), Couvillion v. Office of Pers. Mgmt., No. DA-0831-03-0160-I-1 (M.S.P.B. Aug. 12, 2004), denying Couvillion's petition for review of the Board's initial decision, Couvillion v. Office of Pers. Mgmt., No. DA-0831-03-0160-I-1 (M.S.P.B. Sept. 26, 2003).  The Board held that a Qualified Domestic Relations Order ("QDRO"), which provided for payment of a portion of Couvillion's retirement benefits to his former spouse's estate (should she predecease him), was "a proper QDRO to be processed by OPM."  Id., slip op. at 7.  We affirm.

## BACKGROUND

Couvillion is a federal employee with a potential annuity under the Civil Service Retirement System.  Couvillion and his former spouse, Beverly Couvillion, were

divorced on December 16, 1996, in Louisiana state court. Couvillion and his former spouse entered into a consent judgment that provided for the division of their respective pensions pursuant to QDROs to be later submitted to the state court. The QDRO dividing Couvillion's future federal annuity was entered on November 29, 1999. The QDRO reads in pertinent part:

> Pursuant to 5 CFR 838.1012(b)(3), if BEVERLY BREWER COUVILLION dies before MICHAEL JUDE COUVILLION, SR. the Untied [sic] States Office of Personnel Management is directed to pay BEVERLY BREWER COUVILLION's share of MICHAEL JUDE COUVILLION, SR.'s civil service retirement benefits to BEVERLY BREWER COUVILLION's estate.

Couvillion v. Couvillion, 492-386 (La. 24th Jud. Dist. 11/29/99). Couvillion appealed various aspects of the QDRO to a Louisiana appeals court, including the above-quoted section. Although the appeals court ordered an amendment to a different part of the QDRO, it rejected Couvillion's challenge to the provisions of the QDRO ordering payment to his former wife's estate. Couvillion petitioned the Louisiana Supreme Court for review, but that court denied review.

The consent judgment, QDRO, and amendment to the QDRO were subsequently received by the Office of Personnel Management ("OPM"). OPM regulations require that OPM determine whether state court decrees are "acceptable for processing." 5 C.F.R. § 838.222(c) (2005). If OPM determines that a decree is "acceptable for processing," OPM notifies both the potential retiree and the former spouse that the order is "acceptable for processing" and that OPM must comply with the order. Id. OPM regulations also provide a method for challenging OPM's determination pursuant to that provision. Id.; see also 5 C.F.R. § 838.1009 (2005). OPM notified Couvillion that it would honor the QDRO. Couvillion requested that OPM reconsider its decision, but

was informed that OPM considered the QDRO "acceptable for processing." Couvillion then appealed OPM's decision to the Board, which affirmed. The initial decision of the Board became final on August 12, 2004, when the Board denied Couvillion's petition for review. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).[1]

DISCUSSION

Our review of the Board is limited. The Board's decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1483 (Fed. Cir. 1998).

OPM has promulgated regulations regarding the division of annuities between an employee and former spouse, including situations where the former spouse predeceases the employee:

> (b) Except as otherwise provided in this subpart, OPM will honor a court order acceptable for processing or an amended court order acceptable for processing that directs OPM to pay, after the death of the former spouse, the former spouse's share of the employee annuity to— . . .
> (3) the estate of the former spouse.

5 C.F.R. § 838.237(b) (2005); see 5 C.F.R. § 838.1012(b) (2005).

---

[1] We requested supplemental briefing on whether this case presented an Article III case or controversy in light of the fact that Mr. Couvillion has not retired and his wife has not died. Both parties joined in urging that the requirements of Article III were satisfied. There is a regulatory deadline of 30 days to appeal a decision of OPM to the Board. 5 C.F.R. § 1201.22 (2005). A final decision of the Board must be appealed to this court within 60 days of receipt of notice of the Board's final decision. 5 U.S.C. § 7703 (2000). The 60-day period is "statutory, mandatory, [and] jurisdictional." Monzo v. Dep't of Transp., Fed. Aviation Admin., 735 F.2d 1335, 1336 (Fed. Cir. 1984). Thus, if we were to decline to adjudicate the controversy, Couvillion would be forever barred from appealing the Board's decision to this court. Under these circumstances, we think the case is ripe for review.

Couvillion first argues that there is no statutory basis for 5 C.F.R. §§ 838.237(b) and 838.1012(b). 5 U.S.C. § 8345(j)(1) provides for the division of federal benefits between former spouses. It states in pertinent part:

> Payments under this subchapter which would otherwise be made to an employee, Member or annuitant based on service of that individual shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of—
>    (A) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.

We have previously held that this section "authorizes [OPM] to comply with an appropriate court decree of divorce or property settlement of an employee who is entitled to payments pursuant to the Civil Service Retirement System." Rosato v. Office of Pers. Mgmt., 165 F.3d 1377, 1378 (Fed. Cir. 1999) (alteration in original) (quotations omitted). Couvillion also argues that the regulations conflict with 5 U.S.C. § 8345(e) because that section mentions estates, but does not provide for payments to an estate in the present situation.[2] Section 8345(e) does not in any way suggest that the regulations are unauthorized. Therefore, 5 C.F.R. §§ 838.237(b) and 838.1012(b) are not invalid.

Second, Couvillion argues that the original state court decree should govern and that OPM is precluded from recognizing orders issued after the date of the original decree, such as the QDRO involved here. The regulations specifically provide that "[w]here there are two or more court orders relating to the same former spouse, the

---

[2] 5 U.S.C. § 8345(e) provides that payment due a minor, or an individual mentally incompetent or legally disabled, may be made to a person who is the claimant's guardian or fiduciary by state law or otherwise "legally vested with the care of

04-3453                                           4

one issued last will be honored." 5 C.F.R. § 838.1016(b) (2005).  Couvillion's reliance on our decision in Vaccaro is misplaced.  In Vaccaro v. Office of Personnel Management, 262 F.3d 1280, 1282-83 (Fed. Cir. 2001), a 1996 divorce decree divided marital property but made no mention of a survivor annuity.  After Mr. Vaccaro's death, in 1997, his former spouse was awarded a survivor annuity by the state court.  Id. at 1283.  5 U.S.C. 8341(h)(4) directs OPM that:

> (4) [f]or purposes of this subchapter, a modification in a decree, order, agreement, or election referred to in paragraph (1) of this subsection shall not be effective—
> (A) if such modification is made after the retirement or death of the employee or Member concerned, and
> (B) to the extent that such modification involves an annuity under this subsection.

We held that "[t]he 1997 order was ineffective as a matter of law under 5 U.S.C. § 8341(h)(4) because it modified the 1996 decree after Mr. Vaccaro's death by providing a survivor annuity when the 1996 decree made no mention of such an annuity." Vaccaro, 262 F.3d at 1287.  Couvillion's case is distinguishable because it does not involve a survivor annuity, and therefore does not involve 5 U.S.C. § 8341(h).[3]  Rather, this case involves 5 U.S.C. § 8345(j)(1), which provides that "[p]ayments  . . . which would otherwise be made to an employee . . .  shall be paid . . . to another person if  . . . expressly provided for in the terms of . . . any court decree of divorce . . ., or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce . . . ."  Pursuant to 5 C.F.R. § 838.1016(b), "[w]here there are two or

---

the claimant or his estate", or if no fiduciary has been appointed, to any person OPM finds is responsible for the care of the claimant.

[3]      Contrary to the arguments of Couvillion, his case also does not involve 5 C.F.R. § 838.1004(e), which pertains to survivor annuities.

04-3453                                    5

more court orders relating to the same former spouse, the one issued last will be honored." Here, the QDRO was issued after the divorce decree, and therefore OPM must recognize the QDRO.

Third, Couvillion argues that the decision of the Louisiana appeals court violated Louisiana law. The Board found the QDRO proper because it was issued and affirmed by the courts of Louisiana, and that OPM properly processed the QDRO. Even if the state court made an error under Louisiana law, OPM cannot ignore the order issued by the state court. As we held in <u>Rosato</u>,

> [b]ecause of the regulations that OPM has imposed on itself in cases such as this, it has no duty to look behind a court order and no authority to refuse to accept an order . . . . Consequently, we lack the authority to engage the United States, through OPM, in the process of seeking correction by the [state] court . . . .

<u>Rosato</u>, 165 F.3d at 1382.[4] Couvillion must seek correction of any error in the Louisiana state courts.

---

[4] The regulations provide:

OPM must comply with court orders, decrees, or court approved property settlement agreements in connection with divorces, annulments of marriage, or legal separations of employees, Members, or retirees that award a portion of the former employee's or Member's retirement benefits or a survivor annuity to a former spouse.

(2) In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.

5 C.F.R. § 838.101(a) (2005).

Finally, Couvillion argues that the Louisiana state-court decision approving the QDRO provision (requiring payment to his former spouse's estate) rests upon a misinterpretation of federal law because, he alleges, the Louisiana court interpreted federal law to compel payment to the estate of his former spouse. The alleged misinterpretation of federal law plainly presents a federal issue, rather than a matter purely of state law. Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 816 & n.14 (1986); Moore v. Chesapeake & Ohio Ry., 291 U.S. 205, 214 (1934); St. Louis, Iron Mountain & S. Ry. V. Taylor, 210 U.S. 281, 293 (1908). It is unclear whether OPM could enforce (or must enforce) a decree resting on a misinterpretation of either the federal law that OPM is charged with administering or the regulations that OPM itself has promulgated, and that question was not directly addressed in Rosato. However, we need not decide that question here since we conclude that Couvillion's premise is incorrect. The Louisiana appeals court concluded:

> We remind Michael that Beverly earned a share of all retirement benefits acquired during the marriage; her share of such benefits is owned by her. LSA-C.C. art. 2338; Bordes v. Bordes, 98-1004, at 3 (La. 4/13/99), 730 So.2d 443, 445; Frazier v. Harper, 600 So.2d 59, 61 (La. 1992); Sims v. Sims, 358 So.2d 919, 922 (La. 1978). Further, the federal regulations applicable provide a mechanism which allows Beverly to provide for continued distribution of her share, after her death and to her estate, through the agency responsible for administering Michael's pension. See 5 C.F.R. § 838.237(b)(3); 5 C.F.R. § 838.1012(b)(3). If such regulations provide Beverly with a convenient avenue to provide for distribution of her assets to her estate, the decision to take advantage of this feature is hers alone.

Couvillion v. Couvillion, 00-143, p.8 (La. App. 5 Cir. 9/26/00), 769 So. 2d 747, 752, writ denied, 2000-3185 (La. 1/12/01), 781 So. 2d 562 (emphases in original). This decision recognizes that federal law merely creates an opportunity for payment to a former spouse's estate if the state chooses to require such payment. There is nothing in the

Louisiana decision suggesting that federal law compels Louisiana to provide for payment to the former spouse's estate. Under these circumstances OPM is not barred from enforcing the state order.

We have considered Couvillion's other arguments and find them to be without merit.

CONCLUSION

For the foregoing reasons, the decision of the Board is affirmed.

COSTS

No costs.